

DA 12-0245

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 34

IN THE MATTER OF:

J.S.W.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADI 2012-22
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Leo Gallagher, Lewis and Clark County Attorney, Michael Menahan,
Deputy County Attorney, Helena, Montana

          Submitted on Briefs:  January 9, 2013

          Decided:  February 12, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    J.S.W. appeals an order of the District Court for the First Judicial District, Lewis and Clark County, committing her to the Montana State Hospital in Warm Springs, Montana, for a period not to exceed 90 days. We affirm.

¶2    J.S.W. raises two issues on appeal which we have restated as follows:

¶3    1.    Whether this Court should apply the plain error doctrine to review J.S.W.'s claim that her constitutional rights have been violated.

¶4    2.    Whether J.S.W. was denied the effective assistance of counsel.

**Factual and Procedural Background**

¶5    J.S.W. voluntarily admitted herself to the Behavioral Health Unit (BHU) at St. Peter's Hospital in Helena, Montana, on March 2, 2012, after law enforcement officers brought her to the hospital for a mental health assessment following a disturbance. After six days of voluntary commitment, J.S.W. requested that she be discharged. However, the Lewis and Clark County Attorney's Office filed a petition with the District Court requesting that J.S.W. be committed for further evaluation and treatment. The petition alleged that J.S.W. had a mental disorder making her incapable of caring for herself or of managing her own affairs, thus she required commitment.

¶6    That same day, J.S.W. appeared before the District Court. The court advised J.S.W. of her rights, appointed a "friend of respondent" as specified in § 53-21-122(2)(b), MCA, and appointed the Office of Public Defender to represent her. The court set a hearing on the petition for commitment for the following day.

2

¶7     The State's only witness at the hearing was Susan Hemion, a psychiatric nurse practitioner with the BHU at St. Peter's Hospital. At the time of the hearing, it was as yet undetermined from which mental disorder J.S.W. was suffering. Hemion testified that the two working diagnoses for J.S.W. were "mood disorder not otherwise specified" and "dementia." According to Hemion, J.S.W. was experiencing "hyper verbal behavior, hyper irritability . . . racing thoughts, [and] tangential thinking."

¶8     Hemion also testified that J.S.W. had difficulty sleeping while at the BHU and that she appeared agitated. In addition, Hemion testified to a number of behaviors exhibited by J.S.W. while at the BHU which concerned Hemion, including J.S.W. spitting out her medication, and invading the space of other patients. Hemion stated that during a recent examination, J.S.W. forgot what she was talking about, could not stay on topic to answer questions, and could not keep her train of thought longer than a few moments. Hemion concluded that J.S.W. was "too disorganized to be able to do her daily activities safely," and that she was "a danger to herself and others." Thus, Hemion requested that the District Court commit J.S.W. to the Montana State Hospital for "a thorough evaluation" and that she be involuntarily medicated.

¶9     After Hemion testified, the following exchange occurred between J.S.W.'s counsel and the District Court Judge:

> [J.S.W.'s counsel]: Your Honor, I think [J.S.W.] would like to address the Court.
> THE COURT: For three minutes, and no more than three minutes.

J.S.W.'s counsel did not object to this time restriction. J.S.W. addressed the court under the examination of counsel. J.S.W. was also cross-examined by the State's counsel.

3

¶10     At the conclusion of the hearing, the District Court determined that J.S.W. suffered from a mental disorder that required treatment. The court also determined that "the least restrictive, most appropriate alternative" was the Montana State Hospital in Warm Springs. Consequently, the court committed J.S.W. to the Montana State Hospital for a period not to exceed 90 days with a treatment order that included the involuntary administration of medication. J.S.W. appeals.

**Discussion**

¶11     As a preliminary matter, we note here, as we have done in numerous other cases, that an appeal from an order of involuntary commitment is not moot even if the individual has been released, since the issues raised would fall "under the 'capable of repetition, yet evading review' exception to the mootness doctrine." *In re D.K.D.*, 2011 MT 74, ¶ 14, 360 Mont. 76, 250 P.3d 856 (citing *In re D.M.S.*, 2009 MT 41, ¶ 10, 349 Mont. 257, 203 P.3d 776; *In re Mental Health of D.V.*, 2007 MT 351, ¶¶ 30-32, 340 Mont. 319, 174 P.3d 503; *Matter of N.B.*, 190 Mont. 319, 322-23, 620 P.2d 1228, 1231 (1980)).

**Issue 1.**

¶12     *Whether this Court should apply the plain error doctrine to review J.S.W.'s claim that her constitutional rights have been violated.*

¶13     J.S.W. argues that the District Court violated her right to testify on her own behalf when the court imposed an arbitrary time restriction on her testimony. Because J.S.W.'s counsel did not object to the court's time limitation at trial, J.S.W. argues that we should review this alleged error under the doctrine of plain error.

¶14 The State argues on the other hand that plain error review is not warranted here because there was no error. The State contends that although the court initially indicated that J.S.W.'s testimony would be limited to three minutes, in actuality the court did not hold her to that three minutes and did not prevent her from testifying. The State maintains that the District Court properly exercised its discretion regarding the court's control over the mode and order of interrogating witnesses and presenting evidence.

¶15 Although we generally will not review issues raised for the first time on appeal, we have determined that if a constitutional or substantial right is at issue, we may review such a claim under the plain error doctrine. *State v. Gunderson*, 2010 MT 166, ¶ 99, 357 Mont. 142, 237 P.3d 74 (citing *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694). We invoke plain error review " 'where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.' " *Gunderson*, ¶ 99 (quoting *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79).

¶16 When an individual raises the plain error doctrine to request review of issues that were not objected to at the district court level, our review is discretionary. *Gunderson*, ¶ 99 (citing *State v. Gray*, 2004 MT 347, ¶ 13, 324 Mont. 334, 102 P.3d 1255; *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, 77 P.3d 224). Furthermore, we have repeatedly stated that we will use plain error review sparingly on a case-by-case basis. *Gunderson*, ¶ 99 (citing *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091; *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, 180 P.3d 1102).

¶17 The plain error doctrine establishes a two-part test with the burden on the criminal defendant, or in this case, the person facing involuntary commitment,[1] to meet both parts of that test. *Gunderson*, ¶ 100 (citing *State v. Whipple*, 2001 MT 16, ¶ 32, 304 Mont. 118, 19 P.3d 228). Under this test, we ask two questions: (1) does the alleged error implicate a fundamental right; and (2) would failure to review the alleged error result in one of the three consequences mentioned above. *Gunderson*, ¶ 100. "[A] mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *Gunderson*, ¶ 100; *see also State v. Mitchell*, 2012 MT 227, ¶ 10, 366 Mont. 379, 286 P.3d 1196.

¶18 In the case *sub judice*, J.S.W. has identified a constitutional right that is applicable to these sorts of proceedings. The Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution guarantee an individual the right against self-incrimination. A necessary corollary to the right against self-incrimination is the right to testify in one's own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709 (1987). " 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.' " *Rock*, 483 U.S. at 53, 107 S. Ct. at 2710 (quoting *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 645 (1971)).

¶19 In addition, the Fourteenth Amendment secures the right of a criminal defendant to choose between silence and testifying in his own behalf. *Rock*, 483 U.S. at 51, 107

---

[1] An individual facing involuntary commitment has all of the rights guaranteed by both the United States Constitution and the Montana Constitution. Section 53-21-115, MCA.

6

S. Ct. at 2708-09 ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' " (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S. Ct. 2525, 2533 n. 15 (1975)).

¶20 Thus, while the State is correct that a district court does have discretion to manage courtroom proceedings, a court must do so mindful of a party's constitutional rights. *See e.g. State v. Couture*, 2010 MT 201, ¶ 78, 357 Mont. 398, 240 P.3d 987; *State v. Garcia*, 2003 MT 211, ¶¶ 32-33, 317 Mont. 73, 75 P.3d 313.

¶21 Nevertheless, in the instant case, while J.S.W.'s claim does implicate her fundamental right to testify, thereby meeting the first prong of the test for plain error review, she has failed to establish any factual basis for her contention that her right to testify was violated. While we do not condone the District Court's statement that J.S.W. was limited to three minutes, the record reflects that the court did not cut J.S.W. off and her counsel appeared to have sufficient time to develop the line of questioning he felt best served his client. Moreover, the Judge encouraged additional questioning by J.S.W.'s counsel, and also allowed the State to question J.S.W. The transcript clearly reflects this:

> [J.S.W.'s counsel]: Your Honor, I think [J.S.W.] would like to address the Court.
> THE COURT: *For three minutes, and no more than three minutes.* [Emphasis added.]

J.S.W.'s counsel then proceeded to question J.S.W. for a short time after which the following transpired:

> [J.S.W.'s counsel]: I guess I have no further questions, Your Honor.
> THE COURT: Okay. Anything?

7

> [The State's counsel]: Could I ask a couple of questions?
> THE COURT: Sure.

The State then asked J.S.W. a few questions at the end of which the following occurred:

> [The State's counsel]: I don't have any further questions.
> THE COURT: Okay. Anything else?
> [J.S.W.'s counsel]: That's it, Your Honor.

¶22 J.S.W. has failed to persuade this Court that there is any error to review, let alone that a failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. In contrast, *see e.g. State v. West*, 2008 MT 338, ¶ 30, 346 Mont. 244, 194 P.3d 683 (concluding that the factual circumstances identified by West constituted "a quintessential example of 'where failing to review the claimed error at issue . . . may compromise the integrity of the judicial process' ").

¶23 To the extent J.S.W.'s theory on appeal is that the District Court's statement imposing a three-minute limitation is itself a due process violation, without regard to what actually transpired on the record subsequent to the court's statement, J.S.W. has not cited any legal authority supporting this as a constitutional violation. As we indicated above, "a mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *Gunderson*, ¶ 100.

¶24 Because J.S.W. has failed to meet both prongs of the test for plain error review, we hold that plain error review of this issue is not warranted.

**Issue 2.**

¶25 *Whether J.S.W. was denied the effective assistance of counsel.*

¶26 J.S.W. argues that she was denied the effective assistance of counsel when her counsel failed to object to the District Court's imposition of a time restriction on J.S.W.'s testimony. Claims of ineffective assistance of counsel are mixed questions of law and fact which this Court reviews de novo. *State v. Miner*, 2012 MT 20, ¶ 10, 364 Mont. 1, 271 P.3d 56 (citing *Gunderson*, ¶ 66; *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861).

¶27 In her brief on appeal, J.S.W. relies on *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the traditional test for evaluating ineffective assistance of counsel claims, to evaluate her claim. This Court has determined, however, that *Strickland* is inappropriate to evaluate involuntary civil commitment proceedings because *Strickland* fails to adequately protect the liberty interests of the person facing involuntary commitment. *In re T.J.F.*, 2011 MT 28, ¶ 33, 359 Mont. 213, 248 P.3d 804 (citing *In re C.R.C.*, 2009 MT 125, ¶ 16, 350 Mont. 211, 207 P.3d 289).

¶28 Instead, the proper role of an attorney in involuntary commitment proceedings is "to represent the perspective of the respondent and to serve as a vigorous advocate for the respondent's wishes." *T.J.F.*, ¶ 33 (citing *C.R.C.*, ¶ 18). To that end, we look to the following five "critical areas" to measure effective assistance of counsel in these types of proceedings: (1) appointment of counsel; (2) counsel's initial investigation; (3) counsel's interview with the patient-respondent; (4) the patient-respondent's right to remain silent; and (5) counsel's role as an advocate for the patient-respondent. *T.J.F.*, ¶ 33.

9

¶29 We will consider the entire record and evaluate each factor "based on the facts and circumstances of the entire case." *In re C.R.*, 2012 MT 258, ¶ 28, 367 Mont. 1, 289 P.3d 125 (quoting *C.R.C.*, ¶ 19). We will vacate an order of involuntary commitment upon a substantial showing of evidence that counsel did not effectively represent the patient-respondent's interests pursuant to the foregoing standards. *C.R.*, ¶ 28 (citing *C.R.C.*, ¶ 16; *In re Mental Health of K.G.F.*, 2001 MT 140, ¶ 91, 306 Mont. 1, 29 P.3d 485).

¶30 In the instant case, J.S.W.'s claim implicates only the fourth and fifth factors—J.S.W.'s right to remain silent (or, in this case, her right to testify), and counsel's role as an advocate for J.S.W. Neither J.S.W.'s briefs nor the record as a whole indicate any insufficiency regarding the first three factors.

¶31 Based upon our review of the record, we conclude that J.S.W. has failed to make a "substantial showing of evidence that counsel did not effectively represent [J.S.W.'s] interests." *C.R.*, ¶ 28. In his cross-examination of Hemion, the State's witness who was advocating for J.S.W.'s commitment to the Montana State Hospital, counsel effectively elicited that Hemion had no first-hand knowledge of J.S.W.'s driving, or J.S.W.'s abilities in daily tasks such as cooking and cleaning. In addition, under counsel's cross-examination, Hemion conceded that J.S.W. had secured her own food and lodging in Helena, and that J.S.W. had voluntarily checked herself into the BHU. Hemion also conceded under cross-examination that J.S.W. did not display any physical danger to others during her time in the BHU, nor did she demonstrate any level of self harm.

Moreover, while Hemion had testified to J.S.W.'s disorganized thought processes, in his direct examination of J.S.W., counsel was able to keep J.S.W. focused.

¶32    J.S.W.'s allegation of error on counsel's part was counsel's failure to object to the court's statement that J.S.W.'s testimony would be restricted to three minutes. However, as we indicated in the previous issue, J.S.W. testified under both direct and cross-examination, thus the court did not actually restrict her testimony.

¶33    Additionally, in the final few pages of her opening brief on appeal, J.S.W. notes that the following exchange took place after the District Court pronounced judgment:

> [J.S.W.]:  Your Honor, I have something to say. May I say it?
> THE COURT:  Yes.
> [J.S.W.]:  May my attorney assist me?
>
> **(Discussion off the record.)**
>
> [J.S.W.]:  Ma'am, --
> THE COURT:  We are done.
> [J.S.W.]:   I would like to request that instead of going to Warm Springs that you send me to three months in St. Peter's Hospital, the behavior mod unit, because --
> THE COURT:  You talk that over with your lawyer.
>
> **(End of proceedings.)**

Although J.S.W. includes this excerpt from the record at the end of her issue regarding ineffective assistance of counsel, J.S.W. does not indicate just how counsel was ineffective here. Instead, J.S.W. returns to her contentions from the first issue that the District Court erred in limiting her testimony.

¶34    Nevertheless, the court had already indicated, based on the testimony presented, that the least restrictive, most appropriate placement for J.S.W. was at Warm Springs

State Hospital. Moreover, even though J.S.W. expressed her wish to be committed to the BHU at St. Peter's Hospital, the reason the State filed its petition for involuntary commitment for J.S.W. in the first place was because J.S.W. requested to be discharged from that facility.

¶35 We conclude that the record as a whole demonstrates that J.S.W.'s counsel served as "a vigorous advocate" for J.S.W.'s wishes. *T.J.F.*, ¶ 33. Consequently, we hold that J.S.W. was not denied the effective assistance of counsel.

¶36 Affirmed.

/S/ Laurie McKinnon

We Concur:

/S/ Beth Baker
/S/ Patricia Cotter
/S/ Michael E Wheat
/S/ Brian Morris