FILED

March 6 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 54

IN THE MATTER OF:

R.W.K.,

> Respondent and Appellant.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADI 11-040
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> > Wade Zolynski, Chief Appellate Defender, Jennifer A. Hurley, Assistant
Appellate Defender, Helena, Montana
>
> For Appellee:
>
> > Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana
> >
> > John Parker, Cascade County Attorney, Marvin Anderson, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  January 3, 2013

Decided:  March 5, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     R.W.K. appeals from an order of Montana's Eighth Judicial District Court, Cascade County, granting the State's petition for the involuntary commitment of R.W.K. to the Montana State Hospital (MSH) and authorizing MSH to administer appropriate medication involuntarily.  We affirm.

## ISSUES

¶2     R.W.K. raises the following two issues on appeal:

¶3     1.  Did the District Court violate R.W.K.'s statutory and due process rights when it failed to obtain a personal waiver of rights under § 53-21-119(1), MCA?

¶4     2.  Is there a valid order authorizing involuntary medication, either in the original commitment order or in the District Court's amended order?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     R.W.K. is a 55-year-old male with a history of schizoaffective disorder.  On December 24, 2011, law enforcement officers transported R.W.K. to the emergency department at Benefis Health System (Benefis) in Great Falls, Montana, after R.W.K. caused a disturbance at a church.  R.W.K. reportedly entered a church, laid down in a pew, and chanted "I'm dead, I'm dead, I'm dead."  At the emergency room, R.W.K. refused to cooperate and continued to claim that he was dead.  R.W.K. was admitted to the behavioral health unit for further treatment, but refused to walk or change into hospital garments.  Dr. Mary Ann Evans attempted to interview R.W.K. and reported that he made little to no eye contact, would not speak, and refused to eat, take medication, or

get dressed. Dr. Evans further reported that R.W.K. hit and shook the locked unit doors, spoke incoherently, and jumped up and down.

¶6 Before his admission at Benefis, R.W.K. lived in a group home and was a patient of the Center for Mental Health (CMH). The medical records attached to the commitment petition included information from CMH. CMH indicated that R.W.K. had refused to take his medications for several days prior to the incident at the church. CMH also noted that R.W.K.'s behavior had been disorganized and belligerent. R.W.K. was isolating in his room and not talking to anyone "because of the ghost." R.W.K. exhibited symptoms and behaviors that had been recognized in the past to indicate worsening psychosis. R.W.K.'s history includes many instances of psychiatric hospitalization, including time spent at MSH.

¶7 On December 28, 2011, the State filed a petition to involuntarily commit R.W.K. The petition alleged that R.W.K. was unable to care for his basic needs and appeared to pose a danger to himself and others. To determine if R.W.K. needed long-term treatment in a secure facility, the petition requested a mental health evaluation. The District Court set an initial appearance for December 30, 2011, and ordered the appointment of a public defender to represent R.W.K. R.W.K. was to remain at Benefis until the hearing. The District Court appointed a friend of respondent to serve pursuant to § 53-21-102(8), MCA.

¶8 On December 30, 2011, the District Court held a hearing to determine if R.W.K. was seriously mentally ill and in need of commitment. R.W.K. appeared at the hearing accompanied by his public defender and the appointed friend. The District Court opened

the hearing by reading R.W.K. a list of his substantive and procedural rights related to the proceeding. Counsel for the State told the District Court that he had spoken to R.W.K.'s counsel and believed that R.W.K. and his counsel agreed that R.W.K. would knowingly and intentionally waive his procedural rights in the matter. The State recommended commitment to MSH for a period of up to 90 days.

¶9 R.W.K.'s counsel told the District Court that she had met with R.W.K. and the appointed friend and provided R.W.K. with a copy of the petition. R.W.K.'s counsel stated that she believed R.W.K. understood his rights and the nature of the proceeding, even though he suffers from a mental disorder. According to R.W.K.'s counsel, R.W.K. communicated to her the day before the hearing and again the morning of the hearing that he wished to waive his rights pursuant to § 53-21-119, MCA, and would stipulate to the allegations contained in the petition. R.W.K.'s counsel stated that her client would agree that the least restrictive placement was MSH so that they might have a longer concerted effort at getting his medications regulated. R.W.K. did not object to or protest his counsel's representations.

¶10 After the parties made their statements, the District Court orally announced its findings that: (1) the respondent intelligently waived his rights; (2) he suffers from a serious mental illness; (3) he is a danger to himself; and (4) the least restrictive placement is commitment to MSH for a period of up to 90 days. Subsequently, the District Court entered a written order that included a full list of findings of fact and conclusions of law. The order included a finding that R.W.K. "understands all procedural rights and that he waives those rights knowingly." The order also stated that R.W.K. "shall take such

4

medication, as the attending physicians shall prescribe, both at the state hospital and, also, during community outpatient treatment."

¶11 On January 25, 2012, the State filed a motion to amend the commitment order to allow the chief medical officer at MSH to administer appropriate medication involuntarily. The State attached a letter from staff psychiatrist, Dr. Tatjana Caddell, who stated that R.W.K. was incapable of understanding or making informed decisions regarding his health and psychiatric treatment. Specifically, Dr. Caddell noted that R.W.K. was adamantly refusing to take all of his medications and he remained extremely delusional. R.W.K. refused to eat or take in adequate amounts of fluids, which had resulted in his weight dropping to only 93 pounds.

¶12 The District Court held a hearing on the motion to amend on January 26, 2012. R.W.K. appeared via video from MSH. R.W.K.'s counsel stated an objection to the motion to amend. Counsel pointed out that no discussion of involuntary medication occurred at the previous hearing. Counsel argued that the District Court lacked authority and jurisdiction to alter the terms of the commitment. The District Court proceeded with the hearing, but stated that it would allow the parties to brief the issue if they wished to do so. The State elicited testimony from Dr. Caddell concerning the need for involuntary medication. The District Court questioned R.W.K. He continuously claimed that the doctors were trying to poison him and he would not cooperate with them. The District Court granted the State's motion to allow the chief medical officer at MSH to administer R.W.K.'s medications involuntarily, but stated that its ruling was subject to review after receiving more briefing from the parties.

¶13 After receiving the additional briefing from the parties, the District Court issued an order on March 6, 2012, overruling R.W.K.'s jurisdictional objection to amending the original commitment order. First, the District Court determined that its initial commitment order was sufficient to authorize the use of involuntary medication under § 53-21-127(6), MCA, because it contained language requiring that R.W.K. "shall take such medication, as the attending physicians shall prescribe, both at the state hospital and, also, during community outpatient treatment." Next, the District Court concluded that although amendment is not expressly authorized by statute, it could construe and grant the State's motion to amend as a nunc pro tunc motion under M. R. Civ. P. 60(a), or alternatively, pursuant to M. R. Civ. P. 59(e). R.W.K appeals from the District Court's order.

## STANDARDS OF REVIEW

¶14 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100; *In re T.S.D.*, 2005 MT 35, ¶ 13, 326 Mont. 82, 107 P.3d 481. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with a definite and firm conviction that a mistake has been made after reviewing the entire record. *L.K.-S.*, ¶ 14; *T.S.D.*, ¶ 13. We must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re Mental Health of A.S.B.*, 2008 MT 82, ¶ 17, 342 Mont. 169, 180 P.3d 625.

6

¶15 Due process claims arising from involuntary civil commitments are subject to plenary review. *In re Matter of Mental Health of L.K.*, 2009 MT 366, ¶ 11, 353 Mont. 246, 219 P.3d 1263.

¶16 We review discretionary trial court rulings, including post-trial motions, for abuse of discretion. *In re Marriage of Weber*, 2004 MT 206, ¶ 14, 322 Mont. 324, 95 P.3d 694; *In re L.S.*, 2009 MT 83, ¶ 18, 349 Mont. 518, 204 P.3d 707. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. *L.S.*, ¶ 18.

## DISCUSSION

¶17 *Did the District Court violate R.W.K.'s statutory and due process rights when it failed to obtain a personal waiver of rights under § 53-21-119(1), MCA?*

¶18 A respondent to a petition for involuntary commitment has statutory procedural rights. *See* §§ 53-21-115 through -118, MCA. This Court requires "strict adherence" to the statutory scheme governing involuntary commitment due to the "critical importance" of the constitutional rights at stake. *In re C.R.*, 2012 MT 258, ¶ 13; 367 Mont. 1, 289 P.3d 125; *L.K.-S.*, ¶ 15. Section 53-21-119(1), MCA, sets forth the requirements to effectuate a valid waiver of rights in a civil commitment action, and provides in pertinent part as follows:

> A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent acting together if a record is made of the reasons for the waiver.

¶19 "Without factual findings necessary to each procedural requirement, supported by evidence in the record, the commitment order cannot stand." *L.K.-S.*, ¶ 20. In *L.K.-S.*,

7

the patient's attorney represented to the court that the patient was not capable of making an intentional and knowing decision on the matter of a jury trial. *L.K.-S.*, ¶ 22. Patient's counsel concluded that waiver of a jury trial was in his client's best interests. *L.K.-S.*, ¶ 22. Following a careful review of the record, this Court set aside the commitment order after determining that the record was barren concerning the appointed friend's concurrence in the waiver of rights, which was required under § 53-21-119(1), MCA. *L.K.-S.*, ¶ 22. We similarly set aside a commitment order in *L.K.*, a case in which there was an insufficient record concerning whether L.K. was capable of making an intentional and knowing waiver, where no record was made of a waiver by L.K.'s attorney and friend acting together, and no record existed of the reasons supporting such a waiver. *L.K.*, ¶ 17.

¶20    R.W.K. does not claim that the commitment was contrary to his wishes, nor does he claim that the waiver was not made intentionally and knowingly. Instead, R.W.K. argues that the District Court failed to follow the requirements of § 53-21-119(1), MCA, in obtaining the waiver of his procedural rights. Specifically, R.W.K. asserts that only the person being committed may waive his own rights, unless the District Court determines that such person is not capable of making an intentional and knowing decision. Since the District Court did not personally question R.W.K. concerning the waiver, he contends that the waiver of rights was invalid. The State maintains that the District Court's finding of waiver was supported by sufficient facts in the record.

¶21    Pursuant to § 53-21-119(1), MCA, R.W.K. could have validly waived his rights in two ways:  (1) if R.W.K. was capable of making an intentional and knowing decision,

8

R.W.K. could have waived his own rights; or (2) if R.W.K. was not capable of making an intentional and knowing decision, these rights may be waived by R.W.K.'s counsel and appointed friend acting together if a record was made of the reasons for the waiver. Section 53-21-119(1), MCA, does not specify the type or level of inquiry necessary to constitute an intentional and knowing waiver. The District Court determined that R.W.K. was capable of making an intentional and knowing decision regarding his procedural rights, and he validly waived those rights. Given the facts before us, this finding is supported by sufficient facts in the record and complies with the requirements of § 53-21-119(1), MCA.

¶22 The record reveals that R.W.K. was personally present at the District Court's December 30, 2011 hearing on the commitment petition. R.W.K. was accompanied by his attorney and the appointed friend. The District Court opened the proceeding by reading R.W.K. a list of his rights. Next, R.W.K.'s counsel made the following representations to the District Court:

> Your Honor, I did meet with [R.W.K.] yesterday and provided him with a copy of the petition in this matter, although [R.W.K.] does suffer from a mental disorder. It is my belief, Your Honor, that he understood his rights and the nature of this proceeding.
> Also in meeting with [R.W.K.], his friend, Ms. Hilbert, who is present here in court at counsel table, was there as well. And we had a discussion with him about the allegations and what the doctor was recommending here. And [R.W.K.] indicated to me at that time, and again this morning, that he wishes to waive his rights in this matter pursuant to section 353-21-119 MCA [sic] and that he will stipulate to the allegations contained in the . . . petition, as well as Dr. Kasner's report. . . .

¶23 Following these statements, the District Court made several findings concerning R.W.K.'s waiver of his rights. First, the District Court orally stated that: "Based on those

9

representations and the files and records, the Court finds that the respondent has intelligently waived his rights." The District Court's subsequent written order noted that "Counsel and Respondent determined Respondent is capable of making an intentional and knowing decision in this matter," and "they agreed to waive Respondent's rights to a formal proceeding in this matter." The District Court found that "Respondent understands all procedural rights and that he waives those rights knowingly." Furthermore, the District Court concluded that "Respondent has received all the benefit of all statutory and constitutional rights guaranteed by MCA Title 53, Chapter 21 (2011) and the Montana and United States Constitutions."

¶24 While it is true that a defendant in a criminal proceeding must make a personal statement of waiver on the record to validly waive certain rights,[1] we find no error in the District Court's reliance on R.W.K.'s counsel's representations to support the civil commitment order. These statements concerning waiver were made in open court and in the presence of R.W.K. and the appointed friend. Notably, R.W.K. does not contend here that his waiver was anything but intentional and knowing. Under these circumstances, R.W.K. effectively waived his rights by allowing his counsel to inform the judge of his desire to do so.

---

[1] *See e.g. State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288 ("If a defendant chooses to waive his right to be present at a critical stage of the trial, the court must obtain an on-the-record personal waiver by the defendant acknowledging the defendant voluntarily, intelligently, and knowingly waives that right.").

10

¶25    Accordingly, we hold that the District Court complied with the requirements of § 53-21-119(1), MCA, in obtaining R.W.K.'s waiver of rights, and did not violate his due process rights.

¶26    *Is there a valid order authorizing involuntary medication, either in the original commitment order or in the District Court's amended order?*

¶27    Once a trial court determines that a person suffers from a mental disorder requiring commitment, § 53-21-127(6), MCA, provides that:

> The court may authorize the chief medical officer of a facility or a physician designated by the court to administer appropriate medication involuntarily if the court finds that involuntary medication is necessary to protect the respondent or the public or to facilitate effective treatment.

In ordering commitment, if the order includes involuntary medication, the trial court shall set forth "the reason involuntary medication was chosen from among other alternatives." Section 53-21-127(8)(h), MCA.

¶28    R.W.K. challenges whether the District Court's order of commitment contained sufficient language to allow for involuntary medication. The District Court included the following language in its original order of commitment: "The Respondent shall take such medication, as the attending physicians shall prescribe, both at the state hospital and, also, during community outpatient treatment."

¶29    This Court has previously held that such language is sufficient to authorize involuntary medication. *See In re Mental Health of S.C.*, 2000 MT 370, ¶ 15, 303 Mont. 444, 15 P.3d 861. In *S.C.*, the district court ordered the commitment of S.C., and included in the order that S.C. was to "agree to take medication as prescribed." *S.C.*, ¶ 2. S.C. challenged whether the district court satisfied the statutory prerequisites in ordering

11

involuntary medication. *S.C.*, ¶ 11. In our review of the district court's findings of facts, we applied the "doctrine of implied findings," which provides that where the "findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence." *S.C.*, ¶ 14. Although the district court did not specifically state in one distinct finding why involuntary medication was chosen, the court's detailed findings of fact made clear why the court concluded that involuntary medication was the least restrictive and most appropriate alternative. *S.C.*, ¶ 14. This Court held that in ordering that S.C. "agree to take medication as prescribed," the district court complied with the statutory mandates that required it to find that involuntary medication was necessary to protect the person, the public, or to facilitate treatment, and it sufficiently set forth the reason involuntary medication was chosen. *S.C.*, ¶ 15.

¶30 Here, R.W.K. stipulated to the facts as set forth in the petition for commitment and attached medical reports. The District Court specifically found that R.W.K. was "unable to care for his basic daily needs and he appears to be a danger to himself and to others due to mental disorder." R.W.K. had a history of noncompliance with his medication, and these periods of noncompliance often led to heightened psychosis. R.W.K.'s behavior was irrational and belligerent. The District Court found that R.W.K. had "stopped taking his medications and his mental health has deteriorated." Furthermore, the District Court reasoned that if R.W.K. was left untreated, his mental health would continue to deteriorate and he would be unable to care for himself. During his hospitalization at Benefis, R.W.K. refused to take his medications and refused to eat or

12

drink. Given the seriousness of R.W.K.'s condition, the District Court determined that the least restrictive placement that would permit effective treatment was MSH. Based on all of these findings, the District Court ordered that R.W.K. "shall take such medication, as the attending physicians shall prescribe."

¶31 The language employed by the District Court, "Respondent shall take such medication," is even more authoritative than the language used by the district court in *S.C.* This Court commonly interprets the word "shall" to indicate a mandatory and compulsory directive. *See e.g. Montco v. Simonich*, 285 Mont. 280, 287, 947 P.2d 1047, 1051 (1997) ("Both 'shall' and 'must' are mandatory, rather than permissive."); *State v. Bartlett*, 271 Mont. 429, 432-33, 898 P.2d 98, 100 (1995) ("The word 'shall' is compulsory."). The District Court's use of "shall" is strong evidence of its intent to require R.W.K. to take the medication his doctors prescribed.

¶32 Pursuant to our holding in *S.C.*, and based upon the evidence in the record, we hold that the District Court complied with the statutory requirements in ordering R.W.K. to take medications as prescribed by his doctors. This directive was sufficient to authorize involuntary medication because the District Court's other findings made clear the necessity of taking such action to protect R.W.K., the public, and to facilitate his treatment. Moreover, the District Court's findings demonstrate that other alternatives to involuntary medication were considered. For the benefit of all involved, however, and consistent with the provisions of § 53-21-127(6) and (8)(h), MCA, we urge the district courts to plainly and clearly state in orders of commitment whether the circumstances justify authorizing the chief medical officer or designated physician to administer

13

medication involuntarily, and if so, the reason involuntary medication was chosen from among other alternatives.

¶33 Next, R.W.K. contends that the District Court misapplied the Montana Rules of Civil Procedure when it amended its original commitment order. The State filed a motion to amend the commitment order to expressly authorize the chief medical officer at MSH to administer appropriate medication involuntarily. In addressing the motion to amend, the District Court determined that its initial commitment order was sufficient to authorize the use of involuntary medication under § 53-21-127(6), MCA, because it contained language requiring that R.W.K. "shall take such medication, as the attending physicians shall prescribe, both at the state hospital and, also, during community outpatient treatment." As we previously discussed, we agree that the District Court's original order was sufficient to authorize involuntary medication. Therefore, it is unnecessary for this Court to address R.W.K.'s remaining allegations pertaining to the amendment of the original commitment order.

## CONCLUSION

¶34 For the foregoing reasons, we affirm the District Court's determination that R.W.K. validly waived his procedural rights pursuant to § 53-21-119(1), MCA, and that the District Court's order of commitment authorized the administration of involuntary medication.

/S/ PATRICIA COTTER

We Concur:

14

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BETH BAKER