FILED

01/14/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0723

DA 22-0723

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 8N

IN THE MATTER OF:

W.J.B.,

    Respondent and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DI-22-4
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Tammy Hinderman, Appellate Defender, Kristen L. Peterson, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant Attorney General, Helena, Montana

        Lacey Lincoln, Hill County Attorney, Havre, Montana

Submitted on Briefs:  November 13, 2024

Decided:  January 14, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 W.J.B. appeals from an order of the Twelfth Judicial District Court, Hill County, committing him to Montana State Hospital (MSH) for up to 90 days with authorization for the use of involuntary medications. W.J.B. argues the District Court erred in accepting his lawyer's waiver of his right to a trial by jury and that the State lacked sufficient evidence to support his commitment to MSH. We affirm.

¶3 During a separate criminal proceeding, W.J.B. made comments to his public defender suggesting a suicidal threat. The public defender requested a welfare check on October 24, 2022, and the responding sheriff took W.J.B. to Northern Montana Hospital for an evaluation. The State filed a petition for involuntary commitment the next day.

¶4 W.J.B.'s new attorney represented him at his October 25, 2022, initial appearance on the petition for involuntary commitment. W.J.B. expressed distrust of Hill County authorities. When asked by his attorney if he wanted a jury or bench trial, W.J.B. said, "I don't care" because he did not trust that either a jury or the presiding judge would be fair and otherwise protect his rights. W.J.B.'s attorney then said he would "make that choice" for him, choosing to proceed with a bench trial. During the remainder of the hearing,

2

W.J.B. expressed distrust toward the county and court system and impatience with the progress in his separate criminal matter.

¶5 At the October 28, 2022, bench trial, the State presented its only witness, Dr. Bowman Smelko (Dr. Smelko), a certified mental health professional. Dr. Smelko testified in his capacity as an expert witness on W.J.B.'s mental disorder and methamphetamine use based on his interview with W.J.B. In Dr. Smelko's opinion, W.J.B. appeared to be suffering from a psychotic disorder not otherwise specified, manifested in paranoia and delusional thought patterns. W.J.B. had additionally told Dr. Smelko that "he will find a way to kill himself." Dr. Smelko believed W.J.B. was "an imminent danger to himself at the time of the evaluation." W.J.B. then testified on his own behalf, denying any suicidal ideation. W.J.B. testified that anything he said about suicide resulted from his dissatisfaction with his previous counsel and was no longer an issue. On cross-examination, W.J.B. reiterated his desire to present evidence of a conspiracy against him. The State recalled Dr. Smelko, who said W.J.B.'s testimony was consistent with the paranoid behavior W.J.B. displayed during the evaluation.

¶6 The District Court found the State had presented evidence "to a reasonable degree of certainty" that W.J.B. suffered from psychotic disorder and methamphetamine disorder, concluding that commitment to MSH was necessary because W.J.B.'s mental disorder was "causing him to be an imminent threat to himself." The District Court ordered W.J.B.'s commitment to MSH for 90 days and for medical staff there to administer medication as necessary.

¶7 On appeal, W.J.B. argues that the District Court erred by accepting his waiver of his right to a trial by jury and that insufficient evidence supported the District Court's finding that W.J.B. was a suicidal risk due to mental illness.

¶8 We first examine W.J.B.'s argument that the district court erred by accepting the waiver of his right to a trial by jury. Due process claims in an involuntary civil commitment proceeding are subject to plenary review. *In re S.D.*, 2018 MT 176, ¶ 8, 392 Mont. 116, 422 P.3d 122 (citation omitted). This Court reviews an involuntary commitment order to determine whether the conclusions of law are correct and whether the factual findings are clearly erroneous. *In re F.S.*, 2021 MT 262, ¶ 6, 406 Mont. 1, 496 P.3d 958 (citation omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been made. *In re C.R.*, 2012 MT 258, ¶ 12, 367 Mont. 1, 289 P.3d 125 (quotation omitted).

¶9 A person subject to a petition for involuntary commitment has statutory procedural rights. *See* §§ 53-21-115 through -118, MCA. A person facing an involuntary commitment further retains rights "guaranteed by the constitution of the United States and of this state." Section 53-21-115, MCA. We require "strict adherence" to the statutes governing civil commitments "given the utmost importance of the rights at stake." *In re F.S.*, ¶ 7 (quotation omitted). The person may waive their own rights. Section 53-21-119(1), MCA. A district court may rely on counsel's representations concerning waiver of rights when those representations are made in open court in the presence of the person subject to the petition

for involuntary commitment. *In re R.W.K.*, 2013 MT 54, ¶ 24, 369 Mont. 193, 297 P.3d 318.

¶10     Here, W.J.B. waived his right to a jury trial through his counsel. W.J.B. expressed distrust and suspicion toward the potential jury pool, saying at his initial appearance that he did "not feel comfortable in this whole county." When asked by his attorney if he wanted a jury trial, W.J.B. responded, "I do not believe it matters but I don't care . . . . I have no answer." W.J.B.'s attorney then took the initiative to "make that choice," noting for the record his belief that W.J.B. understood "the difference between a bench trial and a jury trial." Because W.J.B. does not trust "potential jurors," his attorney made the decision to "waive the jury." W.J.B. never objected to the waiver of the jury trial by his attorney and participated in the proceedings. Notably, W.J.B.'s appeal concedes that he possessed the capacity to decide to proceed with a bench or jury trial. The evidence in the record demonstrates that W.J.B. had the capacity to make this decision and, by acquiescing to the representations made on his behalf by his attorney, waived his right to a jury trial.

¶11     We turn next to W.J.B.'s argument that insufficient evidence supported his involuntary commitment. A court must first determine that the respondent is suffering from a mental disorder and then determine whether the respondent requires commitment. Section 53-21-126(1), MCA. "The respondent's mental disorder must be proved to a reasonable medical certainty." Section 53-21-126(2), MCA. Evidence is viewed in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re O.L.K.*, 2024 MT 202, ¶ 10, 418

Mont. 90, 555 P.3d 767 (citation omitted). "An imminent threat of self-inflicted injury . . . must be proved by overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. "An overt act need not be a completed act; an attempt or threat, or even a failure to act, may suffice." *In re O.L.K.*, ¶ 24 (quotation omitted).

¶12 Here, Dr. Smelko testified that W.J.B. was suffering from a mental disorder which rendered him a danger to himself. According to Dr. Smelko's unrefuted testimony, W.J.B. "suffers from psychotic disorder not otherwise specified," expressed in "lack of trust, paranoia." During his evaluation by Dr. Smelko, W.J.B. expressed that he was "suicidal over his belief that he was in a no-win situation" because of a conspiracy against him and "he [would] find a way to kill himself as deemed necessary." While W.J.B. testified at the October 28, 2022, bench trial that he was not currently suicidal, W.J.B. also testified on direct examination that "a man at the state hospital" instructed him to say he was "not suicidal" at trial. Accordingly, we conclude that the record contains clear and convincing evidence that W.J.B. was suffering from a mental disorder and that his suicidal statements to Dr. Smelko constituted an overt act resulting in an imminent threat of injury to himself.

¶13 We conclude the District Court did not err in finding W.J.B. had waived his right to a jury trial by relying on the representations made on his behalf by his attorney and sufficient evidence in the record supported his commitment to MSH due to the imminent risk created by his mental disorder.

¶14    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶15    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE