
DA 13-0557

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 221

IN THE MATTER OF:

A.M.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DI 13-9
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jeanne M. Walker, Hagen & Walker, PLLC, Billings, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Brett D. Linneweber, Park County Attorney, Shannan Piccolo, Deputy
County Attorney, Livingston, Montana

                      Submitted on Briefs:  May 21, 2014
                                Decided:  August 19, 2014

Filed:

                      _____
                              Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 A.M. appeals from an order of the Sixth Judicial District Court, Park County, granting the State's petition for the involuntary commitment of A.M. We reverse.

¶2 A restatement of the dispositive issue on appeal is whether the District Court erred when it issued a commitment order without obtaining from A.M. an intentional and knowing waiver of his procedural rights as required by § 53-21-119(1), MCA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 A.M. is a 45-year-old male with a history of mental illness and attempted suicide. On July 13, 2013, A.M. voluntarily checked into Hope House in Bozeman, Montana. Upon his discharge on July 18, 2013, A.M. consumed all of his medications in an attempt at "rebirth." He walked to the emergency room where he was placed in the intensive care unit because his liver enzyme levels were elevated. When asked to describe his mental state, A.M. declined, stating: "[It's] stuff I can't talk about. I'd rather die than give things up." A.M. indicated that he does not consider himself suicidal; he said he had felt the need to rebirth and was still feeling that need. Becky Kronske, a certified professional person, interviewed A.M. and concluded that he appeared to be having grandiose delusions and was suicidal.

¶4 On July 22, 2013, the State filed a petition for involuntary commitment and attached a report by Kronske. The District Court appointed the Office of the State Public Defender to represent A.M. and ordered a friend be appointed if the State could find a suitable person. Nothing in the record indicates that a friend was appointed. At an initial hearing that day, A.M. appeared with counsel via video conferencing. The District Court advised A.M. of his

2

rights, and A.M.'s counsel stated that A.M. had read a statement of rights before the hearing.

A.M. said he had no questions about the rights. A.M.'s counsel told the court:

> I talked to [A.M.], I came over at 11:30, or maybe a little bit before that, probably 11:00, and talked for a little while, and then I came back, again, before the hearing. And [A.M.]—his preference would simply be to go over to Warm Springs, at this point. He doesn't want to have a hearing to challenge the petition. He would stipulate that he has a mental disorder from a traumatic brain injury, but he's hopeful that a change of scenery would help him out with some of the matters that he's dealing with. And if that's incorrect, [A.M.], you just let me know.

¶5 A.M. responded:

> Well, it's just, already, in Livingston, I tried talking with people, attorneys and everything, and I got no response. I still have things at the Main Hotel, you know, personal belongings, paperwork, and everything, that I hope the Flacks haven't stolen, also, as they stole other things from me. So, I figured it'd just be easier to just go up there. I'd just as soon get the evaluation done and over with, since I've already been up there, I've worked in that area before, Butte, and everything, and maybe I can find an attorney up there that will help me in my case that the Courts consider going on in Livingston, and it shouldn't be.

¶6 The District Court approved the stipulation. Both the District Court and A.M.'s counsel advised A.M. of his right to a second hearing. A.M. replied that there was no need for the hearing. The court then orally announced its finding that there was sufficient evidence in the record, together with the parties' stipulation, that A.M. had a mental disorder requiring a commitment. A.M. and his counsel expressed concern for A.M.'s personal belongings at the hotel. A.M.'s counsel suggested that someone from his office check on the items and attempt to secure them. Subsequently, the District Court entered a written order mandating that A.M. be committed to the Montana State Hospital at Warm Springs, Montana, for a period not exceeding 90 days. A.M. timely appealed the court's order.

3

¶7 A.M. challenges his commitment as being implemented in violation of his procedural rights. Specifically, he argues that the District Court failed to follow the requirements of § 53-21-119(1), MCA, in obtaining the waiver of these rights. The State counters that the District Court's findings of fact, based upon A.M.'s statements and his counsel's representations to the court, were more than sufficient to support the court's order and to meet the requirements of § 53-21-119(1), MCA.

## STANDARD OF REVIEW

¶8 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re R.W.K.*, 2013 MT 54, ¶ 14, 369 Mont. 193, 297 P.3d 318 (citations omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with a definite and firm conviction that a mistake has been made after reviewing the entire record. *R.W.K.*, ¶ 14 (citations omitted).

## DISCUSSION

¶9 *Did the District Court err when it issued a commitment order without obtaining from A.M. an intentional and knowing waiver of his procedural rights as required by § 53-21-119(1), MCA?*

¶10 "This Court requires strict adherence to the statutory scheme governing involuntary commitment due to the critical importance of the constitutional rights at stake." *R.W.K.*, ¶ 18 (citations omitted; internal quotation marks omitted). Involuntary commitment statutes

4

afford a respondent many rights, including rights to due process of law, to be present at any hearing, to offer evidence, and to present and cross-examine witnesses. *In re E.P.B.*, 2007 MT 224, ¶ 12, 339 Mont. 107, 168 P.3d 662; *see* §§ 53-21-101(4), -115(2), and -115(4), MCA. "As these and other statutes make clear, a hearing on a petition for involuntary commitment is not merely a *pro forma* requirement, but an opportunity for the parties—both the petitioner and the respondent—to present evidence upon which the trial court can make required findings and enter appropriate orders." *E.P.B.*, ¶ 12.

¶11 Section 53-21-119(1), MCA, sets forth the requirements for a valid waiver of rights in a civil commitment action, and provides in part as follows:

> A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent . . . acting together if a record is made of the reasons for the waiver.

A district court must inquire into whether the person who is the subject of a petition for involuntary commitment is capable of making an intentional and knowing decision. *In re P.A.C.*, 2013 MT 84, ¶ 12, 369 Mont. 407, 298 P.3d 1166. "While § 53-21-119(1), MCA, does not specify the type or level of inquiry necessary to constitute an intentional and knowing waiver . . . [the court] and the parties must make some record that the person who is the subject of the petition for involuntary commitment is capable of making a knowing and intelligent waiver of rights." *P.A.C.*, ¶ 13 (citation and internal quotation marks omitted). "The nature and extent of the record will depend upon the facts and circumstances of each case." *P.A.C.*, ¶ 14. At a minimum, the record must reflect that the attorney discussed the waiver with her client, that the client desired to waive his rights, and that the attorney was

5

satisfied that her client understood his rights and the nature of the proceeding. *P.A.C.*, ¶ 14; *R.W.K.*, ¶¶ 24-25.

¶12 In *R.W.K.*, the respondent was accompanied at the commitment hearing by his attorney and appointed friend, and the district court opened the proceeding by reading R.W.K. a list of his rights. R.W.K.'s counsel made representations that he had met with R.W.K. and provided him with a copy of the petition, and that R.W.K. had indicated he wished to waive his rights and stipulate to the allegations in the petition. His counsel represented to the court that though he was mentally ill, R.W.K. understood his rights and the nature of the proceedings, and that he had the capacity to knowingly and intentionally waive his procedural rights. Following statements from both counsel for R.W.K. and the State as to R.W.K.'s knowing and intentional waiver of his procedural rights, the district court orally announced that the respondent had intelligently waived his rights; that he suffered from a serious mental illness; that he was a danger to himself; and that the least restrictive placement was a commitment to the Montana State Hospital. *R.W.K.*, ¶ 9. These oral findings were followed by a written order from the district court that included a full list of findings of fact and conclusions of law, including a finding that R.W.K. "understands all procedural rights and that he waives those rights knowingly." *R.W.K.*, ¶ 10.

¶13 We concluded in *R.W.K.* that the requisites of § 53-21-119(1), MCA, were met because the district court determined that the respondent was capable of making an intentional and knowing decision regarding his procedural rights, and that he validly waived those rights while accompanied in open court by his attorney and appointed friend. *R.W.K.*,

¶¶ 21-22. We found no error in the district court's reliance on the representations of R.W.K.'s counsel given these circumstances.

¶14 Here, A.M. read the State's petition, and the District Court orally read a list of A.M.'s rights. However, neither A.M. nor his attorney made any representations to the District Court that A.M. understood his rights and the nature of the proceedings and that he had the capacity to knowingly and intentionally waive his procedural rights, nor did the District Court make any inquiry or record in this regard.

¶15 As the Court is encountering an increasing number of stipulations in involuntary commitment cases, we deem it necessary to reaffirm the principles of § 53-21-119(1), MCA, and our pronouncements in *P.A.C.* and *R.W.K.* We therefore hold that the District Court may not accept a stipulation to an involuntary commitment without first making an affirmative determination on the record—based upon the evidence presented, including the representations of the respondent and/or his attorney and friend—that the person to be committed understands his procedural rights, and that he waives those rights intentionally and knowingly. In the alternative, if the respondent is not capable of making an intentional and knowing decision, the respondent's counsel and friend must make a record in compliance with § 53-21-119(1), MCA. Because no evidence was presented and no record was made in this case establishing a knowing and intentional waiver of A.M.'s procedural rights, we must reverse the order of A.M.'s commitment.

¶16 We emphasize that any waiver of rights should preferably be made by the respondent himself when he is capable of making that decision, rather than doing so through the representations of counsel. Though we recognize that each involuntary commitment

7

proceeding presents unique circumstances, we encourage the court, where possible, to obtain on the record a personal waiver by the respondent of those rights he chooses to waive.

¶17   Because the foregoing issue is dispositive, we do not reach the parties' remaining arguments.

## CONCLUSION

¶18   For the foregoing reasons, we conclude the District Court failed to comply with the requirements of § 53-21-119(1), MCA, and supporting caselaw, thereby violating A.M.'s statutory and due process rights.  The District Court's order committing A.M. to the Montana State Hospital is reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE