DA 13-0313

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 257

IN THE MATTER OF:

N.A.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DI 10-30A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender, David Dennis, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant
Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs:  August 27, 2014
Decided:  September 23, 2014

Filed:

                    Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     N.A. appeals from an order of the Eighteenth Judicial District Court, Gallatin County, granting the State's petition for the involuntary commitment of N.A. We reverse.

¶2     A restatement of the dispositive issue on appeal is whether the District Court violated N.A.'s statutory and due process rights when it issued a commitment order without obtaining from N.A. an intentional and knowing waiver of his procedural rights as required by § 53-21-119(1), MCA.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     N.A. is a 31-year-old male with a history of schizoaffective disorder. In early February 2013, N.A. was conditionally discharged from the Montana State Hospital, Warm Springs, Montana. In March 2013, N.A. called his mother from the bank to report a gas leak at their home. N.A.'s mother returned home and, finding no gas leak, drove to the bank to pick up N.A. She had difficulty convincing N.A. to close the car door, and he refused to wear his seatbelt. N.A. tried to exit the moving vehicle twice. N.A.'s mother stopped at a store to contact law enforcement officers. Meanwhile, N.A. wrapped his money in an orange towel and put the towel on his head. When his mother told him not to enter the store like that, N.A. said: "I can because I control the air." Law enforcement officers arrived and placed N.A. in protective custody at Hope House in Bozeman, Montana.

¶4     While in custody at Hope House, N.A. reported smelling chemicals in the hallway, wore a dirty jacket and pants with an open zipper, constantly brushed the floor with his feet, and carried trash in his jacket. John Karath (Karath), a licensed clinical social worker,

2

interviewed N.A. and concluded he was decompensating, showed impaired judgment, and was unable to protect his health and safety.

¶5 On March 11, 2013, the State filed a petition for involuntary commitment and attached a report by Karath. At an initial hearing that day, N.A. appeared in person and with counsel. The District Court asked whether there was an individual who could be appointed friend of respondent pursuant to § 53-21-102(8), MCA. N.A. responded that "[t]here is a possible friend I would like appointed. I would need more time to appoint one." The District Court reserved N.A.'s right to appoint a friend. Upon N.A.'s request, the court held a detention hearing pursuant to § 53-21-124, MCA, and heard testimony from N.A.'s mother and from the Hope House manager. After the testimony, the court ordered that a member of the Crisis Response Team evaluate N.A. to determine whether he was an appropriate candidate for placement on the voluntary side, rather than the emergency detention side of Hope House.

¶6 On March 14, 2013, the District Court held a hearing on the State's commitment petition. N.A. again appeared in person and with counsel. The court received representations from N.A.'s counsel and the State that N.A. had agreed that a community commitment was appropriate. N.A.'s counsel stated: "[N.A.] is supportive of this proposed resolution, and we've talked about it. So he's positive, and I'm hopeful that everything will work out." David Powell (Powell), the certified professional person, testified that he had reviewed the State's petition for involuntary commitment and the records at Hope House, and that he had spoken with Karath, N.A.'s mother, and N.A. Powell "believe[d]" N.A. was suffering from a mental disorder that might require community commitment and concluded it

3

would be in N.A.'s best interest to stay at Hope House on the voluntary side, "which [N.A.] said he would very much enjoy." Powell indicated he had discussed his recommendations with N.A. who "told [him] all of the specifics of the Treatment Plan" and seemed willing to follow through with the plan.

¶7     The court then orally announced its findings that N.A. had a mental disorder requiring a community commitment, that the least restrictive commitment was to the Hope House voluntary side, and that N.A. "has apparently agreed to do that and to abide by the terms and conditions of the rules of the Hope House." Subsequently, the District Court entered a written order mandating that N.A. be committed to a community program for 90 days and listing the conditions of his community commitment program. N.A. timely appealed the court's order.

¶8     N.A. argues that the District Court failed to: (1) follow the requirements of § 53-21-119(1), MCA, in obtaining the waiver of his procedural rights; (2) conduct a hearing satisfying the requirements of § 53-21-126, MCA; and (3) issue a commitment order satisfying the requirements of § 53-21-127, MCA. The State counters that no waiver was necessary because the District Court conducted an adequate hearing with N.A. present and represented by counsel and with testimony from a professional person. The State argues that the record supports the District Court's findings under § 53-21-126, MCA, that N.A. was suffering from a mental disorder and required commitment. The State further argues that the court's order met the requirements of § 53-21-127(8), MCA, because "N.A. implicitly acknowledged his diagnosis by virtue of the fact that he agreed to psychiatric treatment in the community." However, the State does not squarely address N.A.'s contention that the

4

record contains no evidence that he made a knowing and intelligent waiver of his rights to a hearing.

## STANDARD OF REVIEW

¶9 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re R.W.K.*, 2013 MT 54, ¶ 14, 369 Mont. 193, 297 P.3d 318 (citations omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with a definite and firm conviction that a mistake has been made after reviewing the entire record. *R.W.K.*, ¶ 14 (citations omitted).

¶10 Due process claims arising from involuntary civil commitments are subject to plenary review. *R.W.K.*, ¶ 15 (citation omitted).

## DISCUSSION

¶11 *Did the District Court violate N.A.'s statutory and due process rights when it issued a commitment order without obtaining from N.A. an intentional and knowing waiver of his procedural rights as required by § 53-21-119(1), MCA?*

¶12 Section 53-21-119(1), MCA, sets forth the requirements for a valid waiver of rights in a civil commitment action, and provides in part as follows:

> A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent . . . acting together if a record is made of the reasons for the waiver.

A district court must inquire into whether the person who is the subject of a petition for involuntary commitment is capable of making an intentional and knowing waiver of rights.

5

*In re A.M.*, 2014 MT 221, ¶ 11, __ Mont. __, __ P.3d __ (citation omitted). As we stated in *In re P.A.C.*, 2013 MT 84, ¶ 14, 369 Mont. 407, 298 P.3d 1166, "The nature and extent of the record will depend upon the facts and circumstances of each case," but at a minimum, the record must reflect that the attorney discussed the waiver with her client, that the client desired to waive his rights, and that the attorney was satisfied that her client understood his rights and the nature of the proceeding. *P.A.C.*, ¶ 14; *R.W.K.*, ¶¶ 24-25.

¶13 In this case, N.A. did not read the State's petition, and he interrupted the District Court's reading of his rights, which the District Court did not resume. Importantly, as in our recent decision in *A.M.*, neither N.A. nor his attorney made any representations to the District Court that N.A. understood his rights and the nature of the proceedings and that he had the capacity to knowingly and intentionally waive his procedural rights, nor did the District Court make any inquiry or record in this regard. N.A.'s counsel stated that N.A. was supportive of a community commitment, and Powell testified that N.A. had said he would enjoy commitment on the voluntary side of Hope House. However, no evidence was presented and no record was made establishing a knowing and intentional waiver of N.A.'s procedural rights. Pursuant to our holding in *A.M.*, ¶ 15, we conclude that the District Court violated N.A.'s statutory and due process rights when it accepted a stipulation to an involuntary commitment without first making an affirmative determination on the record that N.A. understood his procedural rights and waived those rights intentionally and knowingly. Thus, we must reverse the order of N.A.'s commitment.

¶14 Because this issue is dispositive, we do not reach N.A.'s remaining arguments.

**CONCLUSION**

¶15    For the foregoing reasons, we conclude the District Court failed to comply with the requirements of § 53-21-119(1), MCA, and supporting case law, thereby violating N.A.'s statutory and due process rights. The District Court's order committing N.A. to community commitment is reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Laurie McKinnon, concurring.

¶16    I agree with the Court that the requirements for a waiver of procedural rights under § 53-21-119(1), MCA, were not satisfied. The record does not reflect that N.A. was ever advised of his rights—either at the initial hearing or at the hearing on the commitment petition—by the District Court, counsel, or otherwise. For a waiver of rights to be knowingly and intelligently made, the respondent must first be made aware of his rights— particularly in light of statutory provisions requiring such an advisement. *See* §§ 53-21-115, -119, -121(h), MCA.

¶17    I believe, however, the Court's analysis overlooks that the parties and District Court actually conducted an evidentiary hearing on the State's petition. Following a detention hearing on March 11, 2013, where voluntary placement at the Hope House was considered, the District Court set a trial date of March 14, 2013. On March 14, 2013, the State produced the testimony of professional person David Powell, who established that N.A. was suffering

7

from a mental disorder. Thus, it appears the parties and the District Court were conducting a trial on the petition, with N.A.'s subsequent "stipulation" regarding placement to be thereafter considered. This would explain why no effort was made by counsel or the District Court to satisfy the requirements for a waiver of procedural rights. *See* § 53-21-119(1), MCA. N.A. wasn't waiving any of his trial rights, but was rather agreeing to his placement option.

¶18 N.A. thus argues, as an alternative to an insufficient waiver of his rights, that the State failed to prove he required commitment because of the existence of one or more of the circumstances set forth in § 53-21-126(1) and (4), MCA. The State did not produce sufficient evidence demonstrating that N.A., as a result of his mental disorder, was unable to provide for his own basic needs, had caused or was imminently likely to cause injury to himself or others, or was likely to deteriorate to a point at which he would present a danger to himself or others. Section 53-21-126(1), (4), MCA. The District Court's finding that N.A. suffers from a mental disorder, by itself, is insufficient to satisfy statutory requirements authorizing a commitment. Simply stated, a person may not be committed solely on the basis of having a mental disorder.

¶19 I therefore believe both the Court and the Dissent get lost between the statutory requirements authorizing a commitment, which have not been met, and the statutory requirements for a valid waiver, which similarly have not been met. Because the State did not attempt to present evidence addressing § 53-21-126(1) and (4), MCA, both the Court and the Dissent misinterpret the absence of evidence as N.A.'s waiver of his right to have evidence presented.

¶20  I agree with the Court that the record does not affirmatively establish a knowing and intelligent waiver by N.A. of his procedural rights. However, the Court overlooks that the parties and the District Court appear to have actually conducted a hearing. N.A.'s argument that the evidence presented at that hearing was insufficient pursuant to § 53-21-126, MCA, is therefore well-taken.

¶21  I would reverse the judgment of the District Court, but for reasons in addition to those set forth by the Court.

/S/ LAURIE McKINNON

Chief Justice Mike McGrath, dissenting.

¶22  I dissent. The Court relies in part on our decision in *In re P.A.C.*, 2013 MT 84, ¶ 14, 369 Mont. 407, 298 P.3d 1166. The circumstances of that case are significantly different from those found in the present case. P.A.C. did not appear at the commitment hearing. *P.A.C.*, ¶ 4. Because she was not present, the district court did not have the benefit of observing her demeanor and responses to the proceeding, and she was unable to voice any objection to the representations of her attorney. *P.A.C.*, ¶ 4. At her court-ordered evaluation immediately prior to the hearing, P.A.C.'s mental state was poor. *P.A.C.*, ¶ 4. She refused to cooperate and insisted the only treatment she needed was alcohol and marijuana. *P.A.C.*, ¶ 4. Under those circumstances, there was reason to require confirmation that she understood her rights and the nature of the proceeding. *P.A.C.*, ¶ 13. We noted in *P.A.C.* that the nature and extent of the record necessary to establish a knowing and intelligent waiver would depend upon the facts and circumstances of each particular case. *P.A.C.*, ¶ 14.

9

¶23 In this case, N.A. appeared at the commitment hearing, listened to statements indicating he had agreed to the commitment, and made no protest. The professional person testified that N.A. was "doing really well," was "very insightful about his disease," and "seemed to have a pretty good plan" for his treatment. The State agreed that N.A. was "doing much better." His attorney represented that N.A. was "positive" and "supportive" about his proposed treatment. N.A. personally affirmed to the District Court that he had no questions about the disposition, and thanked the District Court when it wished him good luck in his treatment at Hope House. The District Court had the benefit of directly observing N.A.'s demeanor. The District Court found that N.A. agreed a community commitment would be appropriate. The circumstances that led us to conclude further inquiry was required in *P.A.C.* are not present in this case. I would affirm the commitment order to which N.A. willingly agreed.

/S/ MIKE McGRATH

Justice Beth Baker and Justice Michael E Wheat join the Dissent of Chief Justice Mike McGrath.

/S/ MICHAEL E WHEAT
/S/ BETH BAKER