Justice Beth Baker delivered the Opinion of the Court.
***117 ¶1 The State filed a petition to involuntarily commit S.D. after she attempted to kill herself and expressed ongoing suicidal ideation and hopelessness. After the initial hearing, S.D.'s attorney filed a waiver of her rights, which included her signed consent to involuntary commitment. The District Court approved the waiver and ordered S.D.'s commitment. On appeal, S.D. argues that the District Court violated her statutory and due process rights when it committed her without holding a hearing. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 In January 2017, the State filed a petition against 71-year-old S.D., alleging that she suffered from a mental disorder and required involuntary commitment. The State submitted and incorporated by reference a report by a mental health professional, Jami M. Flickinger (Flickinger), who had examined S.D. Flickinger's report stated that S.D. had made efforts to kill herself while residing in two different assisted living facilities. It stated that at one of the facilities S.D. used a nurse's unattended keys to access most of her medications, and at another facility S.D. had tried-unsuccessfully-to break a mirror to cut herself. According to Flickinger's report, S.D. admitted "ongoing suicidal ideation and hopelessness due to her physical and mental health condition." Flickinger's opinion was that S.D.'s mood was depressed and her affect flat, that she had no insight into the nature of her condition, and that she had inadequate judgment and impulse control. Flickinger also described S.D. as possessing a clear stream of thought without bizarre or illogical elements or spontaneous expressions of hallucinatory, illusional, or delusional thoughts or perceptions. Flickinger recommended that S.D. be committed to the Montana State Hospital for up to 90 days.
¶3 The State's petition for involuntary commitment listed the procedural rights available to S.D. under §§ 53-21-115 to -118, MCA. Flickinger's report, incorporated in the petition by reference, included a list of the same procedural rights, except for information about the right to voluntarily take necessary medications. Based on the State's petition, the District Court issued an order that scheduled both an initial appearance and an adjudicatory hearing and designated two people to act as alternates as S.D.'s appointed friend.
¶4 The State appeared at the initial hearing before the District Court, and S.D. and her attorney appeared via videoconference. The record does not reflect whether S.D.'s appointed friend was present. The District Court ensured that all parties could see and hear one ***118 another and then advised S.D. of *124 her civil commitment procedural rights. After advising S.D. of her rights, the District Court asked her if she had any questions. S.D. replied, "No, I don't have any questions right now."
¶5 That same morning, S.D. and her attorney filed a "Waiver of Hearing on Petition" with the District Court. The waiver stated that S.D. acknowledged that she had received a copy of the State's petition; that she discussed the petition with her attorney; and that she was aware of the "fundamental rights" set forth in the petition, as well as other rights. The waiver included several paragraphs that described the procedural rights in §§ 53-21-115 to -118, MCA, and stated that S.D. was aware, understood, and/or had knowledge of those; it also stated that S.D. had been informed by her attorney that she had the right to a jury trial and the right to appeal any final ruling. The waiver stated S.D.'s belief that she needed treatment for a "mental disease or disorder." It continued, "I wish to avoid any further hearings and I do hereby waive my right to attend any future hearings." S.D. then expressly waived all her listed rights except the right to receive treatment, and she consented to the court entering an order for her involuntary commitment to the Montana State Hospital for a period not to exceed 90 days.
¶6 S.D. and her attorney both signed the waiver. S.D. signed immediately beneath the following text:
I further certify that 1) I have discussed this waiver with my attorney; 2) I understand the rights listed above; 3) it is my desire and intent to voluntarily waive these rights; and 4) I have discussed the nature of these proceedings with my attorney and I understand the purpose of these proceedings.
S.D.'s attorney signed below text that stated:
I certify that 1) I have discussed this waiver with the [R]espondent; 2) I am satisfied that the Respondent understands the rights listed above; 3) I believe it is the Respondent's desire and intent to voluntarily waive these rights; and 4) I have discussed the nature of these proceedings with the Respondent and I am satisfied that the Respondent understands the purpose of these proceedings.
The record does not reflect whether S.D.'s appointed friend participated in S.D.'s decision to sign the waiver or whether Flickinger concurred.
¶7 The District Court issued an order that day committing S.D. to the Montana State Hospital for up to 90 days. The Court stated in the order that it had considered the reasons for the waiver pursuant to ***119 § 53-21-119, MCA, and was satisfied that the "Respondent is aware of the waiver of hearing after having consulted with her attorney, and is capable of making a knowing decision therein."
STANDARD OF REVIEW
¶8 Due process claims in involuntary civil commitment cases are subject to plenary review. In re N.A., 2014 MT 257, ¶ 10, 376 Mont. 379, 334 P.3d 915. We review an involuntary civil commitment order to determine whether the district court's findings of fact are clearly erroneous and its conclusions of law are correct. In re R.W.K., 2013 MT 54, ¶ 14, 369 Mont. 193, 297 P.3d 318. We require strict adherence to the involuntary commitment statutory scheme, considering the "utmost importance of the rights at stake." In re Mental Health of L.K.-S., 2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100.
DISCUSSION
¶9 S.D. argues that the District Court erred as a matter of law when it committed her to the Montana State Hospital upon her signed waiver without a hearing or trial. She contends that the court could not accept her waiver without "a hearing about the waiver, in a courtroom, in front of a judge." The State responds that the record establishes that S.D. was capable of making a knowing and intentional waiver, and the court did not need to hold a hearing.
¶10 Title 53, chapter 21, MCA, authorizes and prescribes the process for involuntary commitment of individuals for mental health treatment. This system is part of a "rather recent development" in the law to establish "strong procedural safeguards to protect the *125 interests of those facing involuntary civil commitment" that are "focused on improving the fairness and accuracy of the process." In re S.M. , 2017 MT 244, ¶ 24, 389 Mont. 28, 403 P.3d 324. Those procedural safeguards are spelled out in §§ 53-21-115 to -118, MCA. Section 53-21-119, MCA, governs waiver of those rights. It provides in part:
(1) A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent, if a friend of respondent is appointed, acting together if a record is made of the reasons for the waiver. The right to counsel may not be waived. The right to treatment provided for in this part may not be waived.
***120 (2) The right of the respondent to be physically present at a hearing may also be waived by the respondent's attorney and the friend of respondent with the concurrence of the professional person and the judge upon a finding supported by facts that:
(a)(i) the presence of the respondent at the hearing would be likely to seriously adversely affect the respondent's mental condition; and
(ii) an alternative location for the hearing in surroundings familiar to the respondent would not prevent the adverse effects on the respondent's mental condition; or
(b) the respondent has voluntarily expressed a desire to waive the respondent's presence at the hearing.
¶11 Breaking it down, this statute prescribes that: (1) all statutory rights afforded a respondent in a civil commitment proceeding may be waived, except for the right to counsel and the right to treatment, see In re S.M. , ¶ 30 (rejecting constitutional challenge to statute prohibiting waiver of right to counsel); (2) if capable of doing so, a respondent may waive her own rights, see In re R.W.K. , ¶ 10 (upholding trial court's conclusion that respondent was capable of waiving his rights and stipulating to commitment); (3) if the respondent is not capable, her rights may be waived only when her counsel and appointed friend agree on the waiver and make a record of it, see In re L.K.-S. , ¶¶ 22-26 (reversing commitment where record did not show appointed friend's concurrence in waiver); In re P.A.C. , 2013 MT 84, ¶ 13, 369 Mont. 407, 298 P.3d 1166 (reversing involuntary commitment where the record did not establish that respondent was capable of making an intentional and knowing decision to waive her rights); and (4) if the court holds a hearing and the respondent is not there, the hearing may go forward in her absence only if the respondent's attorney and friend waive her presence, with the concurrence of the designated professional, and the presiding judge makes the factual findings required by subsection (2), see In re Matter of Mental Health of L.K. , 2009 MT 366, ¶ 19, 353 Mont. 246, 219 P.3d 1263 (concluding that district court could not conduct commitment hearing in respondent's absence without a record that appointed friend or professional person concurred, and with "no record of findings supported by facts as required by § 53-21-119(2)(a) and (b), MCA.").
¶12 Applying these statutory requirements, we have held that a district court may not accept a respondent's stipulation to involuntary civil commitment "without first making an affirmative determination on the record-based upon the evidence presented, including the representations of the respondent and/or his attorney and friend-that ***121 the person to be committed understands his procedural rights, and that he waives those rights intentionally and knowingly." In re A.M., 2014 MT 221, ¶ 15, 376 Mont. 226, 332 P.3d 263. The nature and extent of the record regarding the respondent's waiver depends upon the facts and circumstances of the case. In re P.A.C., ¶ 14. More "diligent" inquiry would be appropriate if the respondent's capacity to waive her rights is in doubt, such as "perhaps involving input from the professional person who evaluated the respondent." In re P.A.C., ¶ 14. But the record does not necessarily have to reflect more than that the attorney had "discussed the matter with her client; that the client desired to waive his rights; and that the attorney was satisfied that her client understood *126 his rights and the nature of the proceeding." In re P.A.C., ¶ 14.
¶13 In In re R.W.K., the respondent appeared at his involuntary commitment hearing with his attorney and his appointed friend. R.W.K.'s attorney represented to the District Court that he had met with R.W.K. and his appointed friend, that R.W.K. understood his involuntary commitment procedural rights and the nature of the proceedings, and that he stipulated to the allegations of the petition and agreed to a commitment at the Montana State Hospital. The District Court determined that R.W.K. was capable of making an intentional and knowing decision, accepted R.W.K.'s waiver and stipulation based on his attorney's representations, and issued an order with a finding that R.W.K. "understands all procedural rights and that he waives those rights knowingly." In re R.W.K., ¶ 10. On appeal, R.W.K. argued that the District Court violated his rights under § 53-21-119(1), MCA, by failing to question him personally about the waiver. We affirmed the validity of the waiver, holding that the District Court could rely correctly on the attorney's representations of R.W.K.'s waiver and need not have made further inquiry. In re R.W.K, ¶ 24.
¶14 In In re P.A.C. , the respondent's attorney appeared without respondent P.A.C. at the commitment hearing. The attorney informed the District Court she had met with P.A.C. and informed her of "all her rights, including the right to be present, and she declined." In re P.A.C., ¶ 4. The District Court then proceeded with the hearing and committed P.A.C., and she appealed. We held that the record did not show that P.A.C. was capable of making an intentional and knowing waiver under § 53-21-119(1), MCA, and that the District Court should have made further inquiry to "satisfy itself that the waiver is intentional and knowing, and [to ensure] that the record reflect[ed] the ***122 district court's acceptance of the sufficiency of counsel's representations as to the waiver, or of any other evidence presented on the issue." In re P.A.C., ¶ 16. We clarified that a respondent does not need to attend a hearing before her attorney can convey her waiver of her right to attend, noting that "[s]uch a requirement would elevate form over substance and would be a disservice to the respondent who does not wish to attend." In re P.A.C., ¶ 15.
¶15 Here, S.D. expressly acknowledged in the written waiver her understanding of her rights and of the purpose of the proceedings. After discussion with S.D., her attorney made an affirmative representation attesting to his satisfaction with her understanding and expressed no concern that she was not capable of waiving her own rights. The representations from S.D. and her attorney demonstrate that S.D. waived her rights and consented to commitment intentionally and knowingly. Those representations were "made by the respondent [her]self" and placed on the record in S.D.'s attested written waiver. In re A.M. , ¶ 16. The record also included Flickinger's report, which indicated that S.D. had a clear stream of thought and no sign that she lacked an ability to make her own knowing decision about the proceedings.
¶16 The question S.D. presents is whether the District Court was required to assess in open court her capacity to make an intentional and knowing waiver. Unlike our decisions in In re L.K. , In re P.A.C. , and In re L.K.-S. , this case does not involve a commitment hearing held in the respondent's absence. Nor is the issue governed by our decision in In re A.M. , where the court accepted a stipulation to commitment when "neither [the respondent] nor his attorney made any representations" regarding the respondent's understanding of his procedural rights or whether "he had the capacity to knowingly and intentionally waive" them, and the district court made no inquiry or record in that regard. In re A.M. , ¶ 14. Here, the District Court's order committing S.D. reflected consideration of S.D.'s waiver under § 53-21-119(1), MCA. The order expressed the court's satisfaction that S.D. was aware of the waiver of her rights after having consulted with her attorney and that S.D. was capable of making a knowing decision.
¶17 Comparing the processes in criminal cases is not particularly helpful in resolving the question on appeal. Criminal *127 procedure statutes provide different procedural requirements, stating for example that a plea of guilty must be entered "in open court." Section 46-16-105(1)(a), MCA. We have recognized that "the Sixth Amendment [to the United States Constitution] and Article II, Section 24, of Montana's Constitution [ (setting forth the rights of the accused) ] do not apply to ***123 civil commitment proceedings." In re J.S. , 2017 MT 214, ¶ 19, 388 Mont. 397, 401 P.3d 197. Civil commitment proceedings instead are protected by the constitutions' Due Process Clauses. In re J.S. , ¶ 15 ; In re S.M. , ¶ 15. In that regard, "the process afforded to respondents in civil commitment proceedings is the subject of a 'considered legislative response,' and we should be cautious to extend constitutional protections that 'place the matter outside the arena of public debate and legislative action.' " In re S.M. , ¶ 25 (quoting Dist. Attorney's Office v. Osborne , 557 U.S. 52, 73, 129 S.Ct. 2308, 2322, 174 L.Ed.2d 38 (2009) ).
¶18 Under § 53-21-119(1), MCA, the only rights a respondent may not waive are the right to counsel and the right to treatment. The statute does not require the court to hold a hearing in order to allow a commitment hearing to be waived and does not require a waiver to be made in open court. This Court's imposition of such requirements would add language impermissibly. See § 1-2-101, MCA. Rather, the record before the committing court-whether presented orally or in writing-must support the substantive determination of a valid waiver. See In re A.M. , ¶ 15.
¶19 On the record presented in this case, we conclude that both S.D.'s waiver and the District Court's order committing her are sufficient to find an intentional and knowing waiver pursuant to § 53-21-119(1), MCA. It was not necessary for the court to set a hearing to inquire further into her waiver of rights. The District Court complied with the requirements of § 53-21-119(1), MCA, in accepting S.D.'s waiver without a hearing and did not violate her right to due process.
CONCLUSION
¶20 The District Court's order of commitment is affirmed.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
JIM RICE, J.