FILED

10/21/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0187

DA 24-0187

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 240

IN THE MATTER OF THE
MENTAL HEALTH OF
P.G.J.,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause No. CDI-24-003 Honorable John A. Kutzman, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator, Justin T. Redeen, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Phoebe P. Marcinek, Deputy County Attorney, Great Falls, Montana

                    Submitted on Briefs:  September 17, 2025

                            Decided:  October 21, 2025

Filed:

_____
               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1  P.G.J. appeals from an order of the Eighth Judicial District Court, Cascade County, granting the State's Petition for Commitment of P.G.J.

¶2  We reverse and restate the issue on appeal as follows:

*Was there sufficient evidence in the record to support a finding that P.G.J. intentionally and knowingly waived her rights?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3  The State's Petition provides that 70-year-old P.G.J. appeared to be suffering from a serious mental disorder, particularly Bipolar 1 disorder, severe, with manic and psychotic features. From November 18, 2023, to the date of the filing of the Petition on February 7, 2024, she had been detained six times in the Cascade County Detention Center and charged with various crimes, including partner family member assault, aggravated assault, criminal possession of dangerous drugs, criminal trespass, disorderly conduct, theft, and violations of privacy in communications. The Petition alleges that P.G.J. had contact with law enforcement thirty-five separate times between October 25, 2023, and February 7, 2024. The State described various incidents leading to P.G.J.'s criminal charges. For example, P.G.J. destroyed machinery with an ax at the ranch she shared with her ex-husband, left threatening and harassing messages on her ex-husband's phone, caused disturbances at hotels, and threatened to kill a former inmate for allegedly killing P.G.J.'s dog.

¶4  The Petition further provides that P.G.J. has delusions of grandeur, infidelity, and persecution. P.G.J. believes she is not affected by illicit substances or being tased. Her family reports that her cyclical moods began around the age of 60, but it was within the

year prior to the filing of the Petition that her behavior began to significantly interfere with her daily functions, personal safety, the safety of others, and long-term relationships, including her marriage of 49 years. P.G.J. also self-reported that she staged a suicide to attempt to get the attention of a man in Great Falls.

¶5 A Psychiatric Mental Health Evaluation performed by Dr. Christian G. Madson on January 18, 2024, was attached to the Petition, and the State requested that P.G.J. be evaluated to determine if she "suffers from a serious mental disorder that may require involuntary commitment to treatment locally, at the Montana Mental Health Nursing Care Center, or at the Montana State Hospital." The State requested that the District Court allow the State to locate and appoint a friend to monitor P.G.J.'s interests, although the record does not show that a friend was ever appointed.

¶6 The District Court appointed the Office of State Public Defender to represent P.G.J., and P.G.J. was represented at the initial hearing held on February 8, 2024. At the initial hearing, the District Court stated that the purpose was to inform P.G.J. of her rights and to determine whether P.G.J. contested probable cause for the filing of the Petition. The District Court proceeded to list P.G.J.'s rights consistent with the rights outlined in § 53-21-115, MCA. The District Court then asked if P.G.J. contested probable cause. P.G.J.'s counsel explained that he met with P.G.J. that morning at the jail and that they were not going to contest probable cause. He stated that he had discussed the matter with P.G.J., and P.G.J. told him "she does not want a trial, and she wants to go to the jail or to the hospital to be stabilized." When asked by her counsel if the foregoing was true, P.G.J. responded only, "[y]es, it is."

3

¶7     The District Court asked the State about the treatment plan, and the State proposed the Montana State Hospital for up to 90 days. The District Court then asked P.G.J.'s counsel if P.G.J. understood the allegations in the Petition. Counsel stated:

> Your Honor, she does understand the allegations but there's also – there are other civil matters that are included. There are criminal matters that she has to consider and she does not want a trial.

Counsel then asked P.G.J. if the foregoing statement was correct, and P.G.J. stated only, "[t]hat's true." The District Court directed no questions to P.G.J. and then immediately found "based on the parties' representations" that P.G.J. had intelligently waived her rights, P.G.J. was seriously mentally ill, and the least restrictive placement was civil commitment to the Montana State Hospital for up to 90 days. The State informed the District Court that it had a proposed stipulated order, which needed to be reviewed by P.G.J.'s counsel.

¶8     Later that same day, the District Court issued its Findings of Fact, Conclusions of Law, and Order for Commitment to Inpatient Mental Health Care ("Order") committing P.G.J. to the Montana State Hospital for a period not to exceed 90 days. The District Court's findings of fact are nearly an exact recitation of the allegations in the State's Petition. The Order provides that P.G.J.'s counsel determined P.G.J. "is capable of making an intentional and knowing decision in this matter" and that P.G.J. and her counsel agreed to waive P.G.J.'s rights to a formal proceeding in the matter. Specifically, the District Court found that P.G.J. "understands all procedural rights and that she waives those rights knowingly." The District Court concluded that P.G.J. suffered from a mental disorder as defined in § 53-21-102, MCA, that she received the benefit of all statutory and constitutional rights guaranteed by the involuntary commitment statutes and the Montana

4

and United States Constitutions, and that commitment to Montana State Hospital was proper.

¶9 P.G.J. argues that the District Court erred in issuing its Order because it failed to develop any record that demonstrated P.G.J. knowingly and intentionally waived her procedural rights. The State responds that P.G.J. and her counsel's testimony in open court constituted a clear waiver of her rights.

## STANDARD OF REVIEW

¶10 We review a district court's civil commitment order to determine whether its findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re M.T.H.*, 2024 MT 26, ¶ 12, 415 Mont. 158, 543 P.3d 581. Findings of fact are clearly erroneous if they are not supported by substantial evidence, if they misapprehend the effect of the evidence, or if they leave this Court with a definite and firm conviction that a mistake was made. *In re M.T.H.*, ¶ 12.

¶11 We require strict adherence to the statutory scheme regarding involuntary commitments because of the critical importance of the constitutional rights at stake. *In re R.W.K.*, 2013 MT 54, ¶ 18, 369 Mont. 193, 297 P.3d 318.

## DISCUSSION

¶12 *Was there sufficient evidence in the record to support a finding that P.G.J. intentionally and knowingly waived her rights?[1]*

---

[1] P.G.J. waived her right to trial and all associated rights. She waived her right to contest the disposition. Though the parties disagree about the significance of P.G.J.'s stipulation and whether the District Court's *findings* or the *evidence* were sufficient to support a waiver, there, very simply, must be sufficient evidence in the record that supports the statutory requirements for a valid waiver. A claim that the record is insufficient to support such a requirement may, under the circumstances here, be raised for the first time on appeal. *State v. Criswell*, 2013 MT 177, ¶ 13, 370 Mont. 511, 305 P.3d 760.

¶13 Title 53, chapter 21, MCA, governs civil commitments in Montana. *In re B.A.F.*, 2021 MT 257, ¶ 15, 405 Mont. 525, 496 P.3d 554. These statutes must be applied to ensure the government does not invade a person's "freedom or liberty without due notice, cause and process." *In re M.K.S.*, 2015 MT 146, ¶ 16, 379 Mont. 293, 350 P.3d 27 (citations omitted; internal quotations omitted). Section 53-21-115, MCA, enumerates a person's procedural rights, including but not limited to the right to attend a hearing, be represented by counsel, offer evidence, and be examined by a professional person. At issue here is § 53-21-119(1), MCA, which provides the following:

> A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent, if a friend of respondent is appointed, acting together if a record is made of the reasons for the waiver. The right to counsel may not be waived. The right to treatment provided for in this part may not be waived.

Section 53-21-119(1), MCA. Thus, there are two permissible routes to waiver. *See In re P.A.C.*, 2013 MT 84, ¶¶ 8-10, 369 Mont. 407, 298 P.3d 1166. Under the first clause of the statute, the respondent may waive her own rights. Under the second clause, the respondent's rights may be waived by counsel and a friend, if a record is made of the reasons for the waiver. The second clause is only triggered when the respondent is not capable of intentionally and knowingly waiving her rights. *See In re P.A.C.*, ¶ 10. Importantly, "[a] district court *must* inquire into whether the person who is the subject of a petition for involuntary commitment is capable of making an intentional and knowing decision." *In re A.M.*, 2014 MT 221, ¶ 11, 376 Mont. 226, 332 P.3d 263 (emphasis added; citing *In re P.A.C.*, ¶ 12).

6

¶14 In *In re P.A.C.*, P.A.C. did not appear for her commitment hearing. *In re P.A.C.*, ¶ 4. At the hearing, P.A.C.'s attorney testified that she had met with P.A.C., informed P.A.C. of all her rights (including the right to be present at the hearing), and P.A.C. declined to appear. *In re P.A.C.*, ¶ 4. The district court made no further inquiry and proceeded with the hearing. *In re P.A.C.*, ¶ 4. P.A.C. later argued that the district court violated her right to due process by proceeding with the hearing and failing to obtain a valid waiver under § 53-21-119, MCA. *In re P.A.C.*, ¶ 6. We agreed with P.A.C. and held that the district court and the parties are required to "make some record that the person who is the subject of the petition for involuntary commitment is capable of making a knowing and intelligent waiver of rights." *In re P.A.C.*, ¶ 13. Although § 53-21-119(1), MCA, does not specify the exact level of inquiry necessary, it is the responsibility of the district court and both parties to ensure "that the record contains some support that the waiver was intentional and knowing" so that the rights of the respondent and the integrity of the proceeding are protected. *In re P.A.C.*, ¶ 13.

¶15 Similarly, in *In re A.M.*, A.M. argued that the district court failed to obtain a valid waiver of his rights as required in § 53-21-119(1), MCA. *In re A.M.*, ¶ 7. A.M. appeared for his initial hearing, and the district court advised A.M. of his rights. *In re A.M.*, ¶ 4. A.M.'s counsel testified that prior to the hearing, A.M. read his rights and said he had no questions. *In re A.M.*, ¶ 4. At the hearing, A.M.'s counsel informed the district court that A.M. preferred to go to Warm Springs, did not want a hearing to challenge the petition, and would stipulate that he had a mental disorder. *In re A.M.*, ¶ 4. The district court and A.M.'s counsel advised A.M. of his right to a second hearing, and A.M. replied that there

7

was no need for one. *In re A.M.*, ¶ 6. The district court approved the stipulation, orally announced its findings that A.M. had a mental disorder, and committed A.M. to the Montana State Hospital for a period not to exceed 90 days. *In re A.M.*, ¶ 6.

¶16 In analyzing whether the district court properly determined whether A.M. waived his rights, we noted that "[a]t a minimum, the record must reflect that the attorney discussed the waiver with her client, that the client desired to waive his rights, and that the attorney was satisfied that her client understood his rights and the nature of the proceeding." *In re A.M.*, ¶ 11 (citing *In re P.A.C.*, ¶ 14; *In re R.W.K.*, ¶¶ 24-25). We stated:

> A.M. read the State's petition, and the District Court orally read a list of A.M.'s rights. However, neither A.M. nor his attorney made any representations to the District Court that A.M. understood his rights and the nature of the proceedings and that he had the capacity to knowingly and intentionally waive his procedural rights, nor did the District Court make any inquiry or record in this regard.

*In re A.M.*, ¶ 14. Consequently, we reversed A.M.'s involuntary commitment order and held that "the District Court may not accept a stipulation to an involuntary commitment *without first making an affirmative determination on the record—based upon the evidence presented*, including the representations of the respondent and/or his attorney and friend—that the person to be committed *understands his procedural rights*, and that *he waives those rights intentionally and knowingly*." *In re A.M.*, ¶ 15 (emphasis added); *In re S.D.*, 2018 MT 176, ¶ 12, 392 Mont. 116, 422 P.3d 122. "'The nature and extent of the record will depend upon the facts and circumstances of each case.'" *In re A.M.*, ¶ 11 (quoting *In re P.A.C.*, ¶ 14). We also explained our preference that the waiver be made by the

8

respondent personally, rather than through counsel's representations alone. *In re A.M.*, ¶ 16.

¶17 In *In re N.A.*, we reaffirmed our rationale in *In re A.M.* and reversed another involuntary commitment order on the basis that the district court failed to make an affirmative determination on the record that N.A. understood his procedural rights and knowingly and intentionally waived the same. *In re N.A.*, 2014 MT 257, ¶ 13, 376 Mont. 379, 334 P.3d 915. We highlighted that N.A. and N.A.'s counsel did not make any representations that N.A. understood his rights and the nature of the proceedings or that he had the necessary capacity to knowingly and intentionally waive his rights. *In re N.A.*, ¶ 13. The district court did not make any inquiry or record establishing that N.A. could properly waive his rights. *In re N.A.*, ¶ 13.

¶18 Our precedent is clear: it is improper for a district court to summarily find a valid waiver without conducting a diligent inquiry into whether a respondent has the capacity to knowingly and intentionally waive her rights. Here, we conclude that reversal of the Order is necessary to protect P.G.J.'s rights. Although the District Court read P.G.J.'s rights aloud to her at the beginning of the hearing, the District Court made no inquiry or affirmative record of the evidence supporting the conclusion that P.G.J. knowingly and intentionally waived her rights. The District Court did not direct any questions to P.G.J. personally regarding waiving her rights and instead relied on the representations of P.G.J.'s counsel to reach the conclusion that a waiver occurred. As explained above, when relying on the representations of counsel to find a waiver under § 53-21-119(1), MCA, at a minimum, the record must demonstrate that counsel discussed the waiver with the

9

respondent, that the respondent desired to waive her rights, and that counsel was satisfied that the respondent understood her rights and the nature of the proceeding. *In re A.M.*, ¶ 11. The present record does not demonstrate that these minimum standards were met. P.G.J.'s counsel represented only the following: he met with P.G.J. the morning of the hearing, and P.G.J. was not contesting probable cause; P.G.J. did not want a trial and wanted to go to jail or the hospital to be stabilized; and P.G.J. understood the allegations in the Petition. Although P.G.J.'s counsel stated that he generally "discussed this matter" with P.G.J., he made no statements suggesting he specifically discussed P.G.J.'s procedural rights with her or whether P.G.J. desired to waive her rights.

¶19    To clarify, while we prefer the respondent personally waives his or her rights, we have held that the rights may be properly waived based on only the representations of counsel if the minimum requirements are met. *See In re R.W.K.*, ¶¶ 17-25. In *In re R.W.K.*, R.W.K.'s counsel explicitly informed the district court that R.W.K. was provided with a copy of the petition; counsel believed that R.W.K. understood his rights and the nature of the proceeding; counsel and a friend of R.W.K. discussed the allegations with him; and R.W.K. indicated to counsel that he wished to waive his rights pursuant to § 53-21-119, MCA, and would stipulate to the allegations in the petition. *In re R.W.K.*, ¶ 22. We affirmed the district court's finding that R.W.K. knowingly and intentionally waived his rights through the representations of his counsel. *In re R.W.K.*, ¶¶ 24-25.

¶20    Unlike R.W.K.'s counsel, P.G.J.'s counsel made no representations specifically related to waiver or whether P.G.J. understood her rights and the nature of the proceeding. Since P.G.J.'s counsel made no representations on waiver, and P.G.J. made no

representations herself regarding waiver, the District Court had no evidence in the record to support the finding that P.G.J. knowingly and intentionally waived her rights. Merely informing P.G.J. of her rights was not sufficient. In addition, a respondent's agreement to stipulate to the allegations in the petition, acknowledgement that treatment is acceptable, and/or acknowledgement that she prefers not having a trial does not alleviate the district court of its duty to perform a thorough inquiry into the respondent's capacity to knowingly and intentionally waive all procedural rights.

¶21　It is particularly imperative for district courts in involuntary commitment cases to strictly comply with the requirements of § 53-21-119(1), MCA, because the statutory and due process rights of a vulnerable respondent are at stake. Here, the record reflects that the entire hearing lasted only eight minutes, and the District Court entered its Order that same day based on the stipulated order drafted by the State. While we set no specific parameters on the timeframe or method necessary to determine whether a respondent is capable of knowingly and intentionally waiving her rights, we emphasize that a district court must not rush through an involuntary commitment hearing, even when the respondent's own counsel fails to raise due process concerns. The District Court performed no inquiry, let alone a thorough or diligent inquiry, to determine if P.G.J. could make a knowing and intentional decision.

¶22　Since no evidence was presented, and no record was developed establishing that P.G.J. knowingly and intentionally waived her rights, we must reverse the District Court's Order to protect P.G.J.'s rights and the integrity of involuntary commitment proceedings.

11

¶23    Since the issue of waiver is dispositive, we need not address the other arguments raised by the parties.

**CONCLUSION**

¶24    For the foregoing reasons, we hold that the District Court erroneously granted the State's Petition. The record lacks evidence upon which a valid waiver could be found, and the District Court erred by finding that P.G.J. waived her rights. We reaffirm the principles from our precedent that protecting the rights of a respondent facing involuntary commitment remains of utmost importance and that district courts must strictly apply the involuntary commitment statutes.

¶25    Reversed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

12